**NOT FOR PUBLICATION**



**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN CARLOS MARTINEZ | No. 23cr553 (EP)<br><br>**MEMORANDUM ORDER**<br><br>**TO BE FILED UNDER SEAL** |

**PADIN, District Judge.**

Defendant Juan Carlos Martinez pleaded guilty to conspiracy to distribute and possess with intent to distribute three kilograms or more of a mixture or substance containing a detectable amount of cocaine.[1] After his plea, and following his participation in the presentence investigation report process, Martinez moved *pro se* to withdraw his guilty plea based on the allegedly ineffective assistance of his then (and now former) attorney Patrick Brackley.[2]

After the Court relieved Brackley as counsel and appointed Joseph Amsel as Defense Counsel, it directed Amsel to indicate whether Martinez still intended to pursue the Motion.[3] Martinez opted to proceed with his Motion, and the parties subsequently asked the Court to determine the existence and extent of Martinez's waiver of attorney-client privilege based on his ineffective assistance arguments.

[1] D.E. 71 ("Rule 11 Application") & D.E. 72 ("Plea Agreement"). The Plea Agreement included an attached Schedule A setting forth the parties' Guidelines stipulations and sentencing-related waivers. *See* Plea Agreement, Schedule A ("Schedule A").

[2] D.E. 80 ("Martinez Affidavit" or "Martinez Aff.") & 80-1 ("Motion" or "Mot.").

[3] D.Es. 84 & 87.

Those requests began a multi-year process to resolve several disputes among Martinez, Brackley, and the Government, culminating in the Court's January 15, 2026, evidentiary hearing.[4]

The Court has considered all filings on the docket, including the Government's opposition to the Motion,[5] Martinez's reply brief,[6] the Evidentiary Hearing Transcript, and Martinez's post-hearing submission.[7] For the reasons explained below, the Motion is **DENIED**.

## I. BACKGROUND

### A. The Underlying Criminal Conduct

In early September 2021, a confidential informant told law enforcement that members of a drug-trafficking organization would deliver narcotics to Martinez. D.E. 91 ("PSR") ¶¶ 8–9.[8] Law enforcement agents accordingly placed Martinez under surveillance and, on September 12, 2021, watched him travel from New Jersey to several locations in New York. Two men entered Martinez's vehicle before the group drove to the Bronx. *Id.* ¶ 9; Compl., Ex. B ¶¶ 2–3.

When Martinez stopped his vehicle in the Bronx, he was accompanied by Carlos Crespo-Sanchez and Julio Enrique Ferrer Taveras. PSR ¶ 9. Ferrer Taveras exited Martinez's vehicle carrying a black and green duffel bag (the "Bag"), at which point law enforcement approached and

[4] D.E. 133 ("Evidentiary Hearing Transcript" or "Hr'g Tr."). The Court refers to this hearing as the "Evidentiary Hearing."

[5] D.E. 112 ("Opposition" or "Opp'n").

[6] D.E. 118 ("Reply").

[7] D.E. 134 ("Post-Hearing Brief" or "Post-Hearing Br.").

[8] Because Martinez has not yet been sentenced, the Court has not adopted the PSR's factual findings or Guidelines calculations. The Court cites the PSR in this section only for matters that are undisputed, independently supported by the record, or attributed expressly to Martinez or the Government. *See* D.E. 1 ("Complaint" or "Compl."), Ex. B (statement from a special agent with the United States Drug Enforcement Administration setting forth facts relevant to the investigation and Martinez's arrest).

detained the group. *Id.* ¶¶ 9–10; Compl., Ex. B ¶¶ 2–3. According to the PSR, Martinez claimed ownership of the Bag and consented to its search, while Crespo-Sanchez and Ferrer Taveras denied owning it. PSR ¶ 10. The Bag contained approximately fourteen kilograms of a substance that field-tested positive for cocaine. *Id.*; Compl., Ex. B ¶ 3.

At the Evidentiary Hearing, Agent Matthew Herbert[9] testified that, after Martinez had been handcuffed—but before agents administered *Miranda* warnings—Martinez responded "more than ten" when asked how much cocaine the Bag contained. Hr'g Tr. at 89:17–90:8, 111:19–112:8. Herbert further[10] testified that he then administered oral *Miranda* warnings and that Martinez thereafter admitted the Bag contained cocaine and consented to its search. *Id.* at 90:15–24, 91:11–20. Consistent with that testimony, the PSR states that, after receiving *Miranda* warnings, [redacted] PSR ¶ 10.

[redacted] *Id.* ¶ 11. Martinez

[9] Agent Herbert testified he was a task-force officer with the Drug Enforcement Administration in Newark, New Jersey, a position he had held since 2018. His work involved investigating large-scale drug-trafficking and money-laundering organizations, and he served as one of the case agents in the investigation of Martinez. Hr'g Tr. at 79:2–19, 80:8–11.

[10] The PSR does not mention the earlier "more than ten" response, and instead begins its account of Martinez's admissions with his post-*Miranda* statement that he knew the Bag contained approximately ten kilograms of cocaine. PSR ¶ 10. At the Evidentiary Hearing, however, Agent Herbert acknowledged that Martinez first responded "more than ten" after he had been handcuffed, while he was not free to leave, and before agents administered *Miranda* warnings. Hr'g Tr. at 111:19–112:8. Agent Herbert testified that he later administered oral warnings inside a law-enforcement vehicle, although those warnings were not recorded or memorialized on a signed form at the scene. *Id.* at 90:15–24, 112:19–114:16. Martinez testified that he did not receive *Miranda* warnings until later at DEA headquarters. *Id.* at 13:15–14:14. The Court need not resolve that dispute in recounting the investigation; the potential significance of the initial unwarned statement is addressed below.

consented to searches of that apartment as well as his New Jersey residence. At the apartment, law enforcement recovered approximately ten pounds of marijuana and approximately 500 grams of suspected cocaine; at Martinez's residence, agents recovered approximately $34,000, which Martinez admitted represented drug proceeds. *Id.*; Compl., Ex. B ¶ 3.

On September 13, 2021, Martinez, Crespo-Sanchez, and Ferrer Taveras were charged with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Compl.; PSR ¶ 3.

### B. Brackley's Representation and the Ensuing Plea Negotiations

Martinez retained Brackley three days after his arrest. Martinez Aff. ¶ 3. At the Evidentiary Hearing, Brackley testified that he requested and participated in two reverse proffers at which the Government outlined its evidence. Brackley First Aff. ¶¶ 9–19; Hr'g Tr. at 124:18–125:20, 126:9–127:24, 130:14–132:9. He also negotiated progressively more favorable charging proposals for Martinez. *Id.* at 132:10–25, 135:6–23, 137:2–13. At the Plea Hearing, Brackley represented that he had provided Martinez with every document the Government had given him. Plea Tr. at 16:12–22.[11]

The negotiations moved from an offer carrying a ten-year mandatory minimum to an offer carrying a five-year mandatory minimum, and finally to a plea under 21 U.S.C. § 841(b)(1)(C) with no mandatory minimum. Hr'g Tr. at 128:14–24, 132:10–25, 135:6–23, 137:2–13. After rejecting the first two offers, Martinez accepted the third. *Id.* at 128:14–24, 132:10–25, 145:15–146:7. The final agreement stipulated to a total offense level of 25, prohibited either party from

---

[11] Brackley submitted an affidavit directly to the Court on November 19, 2024. *See* D.E. 101 at 2. Herein, the Court refers to this affidavit as "Brackley First Affidavit" or "Brackley First Aff." At the request of the Court, Brackley then submitted a supplemental affidavit on December 3, 2024. D.E. 103 ("Brackley Second Affidavit" or "Brackley Second Aff.").

seeking any departure, adjustment, or variance not set forth in Schedule A, and contained reciprocal appellate waivers. *See* Plea Agreement ¶¶ 7–10 & Schedule A ¶¶ 1–11.[12]

Brackley regarded the final agreement as an extraordinary result; he testified that it was "the best federal plea [he] ever got." *Id.* at 141:1–8. He explained that was the case because the agreement eliminated the mandatory minimum and placed Defendant "in the best possible position to do better than even the guidelines." *Id.* at 141:8–21.

The Government's offer was time-limited. A key issue underlying Martinez's Motion is how much time he had to review the Government's offer and whether he was given adequate legal advice concerning its contents. The agreement was dated April 26, 2023. *See* Hr'g Tr. at 135:12–14. Brackley testified that he gave Martinez the written agreement as soon as he received it, although he produced no email or other documentation showing that transmission. *Id.* at 168:11–23. Martinez testified that he first saw the agreement on May 3, the date it expired. *Id.* at 27:12–28:11, 31:11–22.

The substance of the proposed agreement, however, was not first raised on May 3, 2023. As early as March 31, 2023, Martinez was asking Brackley whether his offense level would be lower under § 841(b)(1)(C). *Id.* at 133:16–134:23. On May 1, after consulting his family, Martinez texted Brackley that, "if it is as you said," he was willing to accept the plea they had discussed. *Id.* at 136:18–24; Gov. Ex. G-1 at 35–36 (texts between Martinez and Brackley).[13] The next day, Martinez asked about the new base offense level. *Id.* at 138:1–6. Thus, although

[12] Martinez also signed an acknowledgment that he had read and discussed the agreement and Schedule A with counsel, understood them, and had received no unwritten promises. Plea Agreement at 7.

[13] The exhibit was admitted at the Evidentiary Hearing by stipulation, and Martinez acknowledged at the Hearing that he sent this message and that it concerned the Government's final plea proposal. Hr'g Tr. at 41:3–14, 78:8–11.

Martinez maintained that he first saw the written agreement on May 3, he acknowledged discussing the no-mandatory-minimum proposal before then and expressed a willingness to enter a plea with no mandatory minimum two days before the deadline. The deadline also carried a significant risk: if Martinez rejected the offer, the Government intended to indict him on charges carrying a mandatory minimum and could invoke his prior conviction under 21 U.S.C. § 851. *Id.* at 145:7–14.

On May 3, 2023—the date the offer expired—Martinez met Brackley at a restaurant for lunch. Before the May 3 lunch, Brackley had consulted Frederick Sosinsky, an experienced criminal defense attorney and longtime professional colleague, about what Brackley viewed as unusual aspects of Martinez's case. Hr'g Tr. at 178:12–179:22, 180:6–181:13. Thus, when the Government extended the time-limited plea offer that eliminated any mandatory minimum and Martinez remained reluctant to accept it, Brackley asked Sosinsky to attend the lunch and offer an independent assessment of the proposed disposition, the facts of the case, and Martinez's likely sentencing exposure. *Id.* at 180:13–181:13; Brackley First Aff. ¶ 23. Sosinsky agreed to participate as a professional courtesy: he had never met Martinez, did not work for Brackley, and received no compensation for attending. Hr'g Tr. at 181:16–25.

Martinez testified that, at the lunch, the attorneys did not review the agreement line by line with him. Brackley did, however, reportedly describe the Guidelines range as effectively "zero to 70" and told Martinez there was a "high probability" of no incarceration. Hr'g Tr. at 28:12–20, 31:1–5, 33:4–16, 34:16–35:17. Brackley and Sosinsky agreed that no line-by-line review occurred at lunch, but both denied making any promise or probability prediction; both testified that they stressed the benefit of eliminating the mandatory minimum but that the sentence was ultimately within the Court's discretion. *Id.* at 141:8–142:5, 186:18–187:17, 188:11–25. Martinez left the

lunch with the agreement, read it repeatedly that day, signed it that evening, and proceeded with the plea hearing. *Id.* at 30:7–31:22, 42:23–43:16.

### C. The Plea Hearing

On July 12, 2023,[14] Martinez waived indictment and pleaded guilty to a one-count Information charging a cocaine conspiracy under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Plea Agreement; D.E. 81 ("Plea Transcript" or "Plea Tr.") at 7:12–8:15, 30:15–31:3, 32:3–14.

Under oath, Martinez confirmed he was fully satisfied with counsel, had discussed the case and all possible defenses, and was pleading guilty willingly because he was guilty. Plea Tr. at 8:16–9:10. He read aloud his acknowledgment that he and counsel had reviewed the entire plea agreement, including Schedule A to the Plea Agreement, that he understood it, and that no additional promises existed. *Id.* at 13:19–14:6. When the Court asked again, Martinez said counsel had explained every term, he had no questions, and that Brackley's description of repeated discussions about the Plea Agreement, Guidelines, and rights surrendered was accurate. *Id.* at 14:7–17:4.

The Court separately told Martinez at the Plea Hearing that the final Guidelines range could not be known until the PSR was completed, that his criminal history would materially affect that range, and that the Court could impose a sentence above or below the advisory range when legally authorized. *Id.* at 21:10–23:16. Martinez acknowledged that he could not withdraw the plea merely because someone's Guidelines prediction proved wrong. *Id.* at 23:14–20. He denied receiving any promise or assurance outside the written agreement and again said he was pleading guilty freely because he was guilty. *Id.* at 18:1–19:2. He also confirmed that counsel had reviewed the Rule 11 Application with him, that he had no questions about it, that no one had forced him to

[14] The Court refers to this hearing as the "Plea Hearing."

enter the agreement, and then identified the signature on the Rule 11 Application as his. *Id.* at 26:16–27:25.[15] Of note, the Rule 11 Application also stated that, except for arguments regarding a departure set forth in Schedule A, Martinez had "waived the right to argue that the sentencing judge should impose a sentence below the range that results from this offense level." Rule 11 Application at 6.

For the factual basis of the plea colloquy, Martinez admitted that he knowingly and intentionally agreed with others to possess with intent to distribute three kilograms or more of cocaine, knew cocaine was a federally controlled substance, and was guilty of the charged conspiracy. *Id.* at 30:9–31:15. The Court found the plea knowing and voluntary and supported by an independent factual basis. *Id.* at 32:3–14.

**D. Defendant's Motion, the PSR, and the Ensuing Briefing**

On March 8, 2024, Martinez filed the Motion and the accompanying affidavit. He asserted that he did not know the other passengers in the car, did not know the Bag's contents, entered the plea only because Brackley and Sosinsky assured him that the agreement created a high probability of no incarceration, and received ineffective assistance because Brackley previously represented [redacted] who Martinez alleges was the confidential informant whose tip led to his arrest. Martinez Aff. ¶¶ 4–6, 12–17.

Martinez also participated in the PSR process after pleading guilty. The final PSR calculated a total offense level of 25 and criminal history category IV, producing an advisory range of 84 to 105 months—higher than the 70-to-87-month range anticipated when the agreement was

[15] At the Evidentiary Hearing, Defense Counsel asserted that Martinez had not signed the Rule 11 application and, after showing Brackley a copy, elicited Brackley's agreement that the copy before him was unsigned. Hr'g Tr. at 169:2–10, 170:8–10. The docket record, however, contains Martinez's signed Rule 11 application at D.E. 71, and Martinez identified the signature as his at the Plea Hearing. *See* Rule 11 Application at 7; Plea Tr. at 26:16–27:8.

signed. PSR ¶¶ 30, 36, 72–73. The PSR also stated that Martinez "truthfully admitted" the criminal conduct during his Probation interview and expressed remorse. *Id.* ¶ 18. Martinez did not object to that statement, even though the Motion was already pending when the final PSR issued. Hr'g Tr. at 52:3–8, 53:1–54:2.

The Government opposed Martinez's Motion. It maintained that the sworn plea record defeated Martinez's assertion of innocence, that [redacted] was not the informant, and that Martinez had not shown prejudice from any alleged deficiency in Brackley's performance. Opp'n at 4–18.

In his Reply, Martinez focused on a statement in Brackley's First Affidavit that Martinez could "request a non incarceratory Sentence," yet Schedule A barred a defense request for a variance below the stipulated range. Reply at 5–9 (quoting Brackley First Aff. ¶ 20). The Reply also doubled down on the conflict claim, challenged Brackley's credibility, and argued that, at a minimum, an evidentiary hearing was required. *Id.* at 9–14.

Because the submissions presented material factual disputes—including sworn accounts in direct conflict—the Court could not resolve the Motion on the papers alone and ordered a hearing focused on counsel's plea advice and the alleged conflict. D.E. 119. Before the hearing, Martinez initially represented that, if the Government credibly denied [redacted] was the source, "no further analysis is required," and asked the Court to compel only the "binary inquiry" whether [redacted] was the informant. D.E. 99 at 3–4. Martinez later changed course, arguing that the binary answer was insufficient, and demanded the actual source's identity and broader information concerning the investigation. D.E. 123 at 2–3. In its January 9, 2026 Order, the Court found that the expanded request improperly moved the goalposts without any law supporting that request, held that Martinez had not shown a legitimate need for the source's identity, denied both *in camera* and open-court disclosure of that identity, and required the Government's witnesses to answer the

binary question whether [redacted] was the informant and explain the basis for the witness's knowledge. D.E. 128 ("Pre-Hearing Order") at 3–7.

### E. The Evidentiary Hearing

On January 15, 2026, the Court held the Evidentiary Hearing to resolve the material factual disputes raised by Martinez's Motion. The Court heard testimony from Martinez, attorney Geoffrey Stewart,[16] Agent Herbert, Brackley, and Sosinsky.

Following the Evidentiary Hearing, the Court assesses the credibility and weight of the witnesses' testimony, including where Martinez's account conflicts with that of his former counsel. *See United States v. Washington*, 341 F.2d 277, 281 (3d Cir. 1965) ("The good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion under Rule 32(d) are preeminently issues for the hearing court to decide."); *accord United States v. Brooks*, 431 F. App'x 95, 99–100 (3d Cir. 2011).

After the Hearing, Martinez filed the Post-Hearing Brief.[17] In it, he argues principally that the testimony and other evidence support his conflict-of-interest and ineffective-assistance claims,

[16] Stewart is a criminal defense attorney who has practiced since 1990 and is admitted in New York and New Jersey. He testified that, during more than thirty years of practice, he had handled thousands of state and federal criminal matters, including federal narcotics cases in this District. Hr'g Tr. at 61:19–63:2. Martinez contacted Stewart in February 2022 for a brief telephone consultation but did not retain him. *Id.* at 23:1–24:24, 64:12–65:5, 67:9–13.

[17] The Court addresses what it views as the problematic manner in which Defense Counsel has presented several of Martinez's arguments across his filings. For instance, the Post-Hearing Brief repeatedly takes isolated facts and legal principles to their most extreme conceivable conclusion, without citing authority that supports the resulting inference. For example, because Agent Herbert "conceded" that protecting a confidential informant's identity is of paramount importance, counsel argues that Agent Herbert had a powerful motive to deny [redacted]'s involvement, and therefore it has not been definitively established that [redacted] was not the informant. Post-Hearing Br. at 1–2. That argument does not identify evidence that Agent Herbert testified falsely, and effectively asks the Court to infer, from Agent Herbert's acknowledgment of a legitimate professional responsibility alone, that he was willing to commit perjury. Accepting that inference without supporting evidence would be untenable in practice. Any witness's professional duties or

undermine the credibility of the Government's witnesses and Brackley, and establish both a credible assertion of innocence and a reasonable probability that he would have proceeded to trial if properly advised. Post-Hearing Br. at 1–4.

*1. Testimony concerning* [redacted]

The testimony at the Evidentiary Hearing clarified Martinez's suspicion and the extent of [redacted]'s role in the investigation. Agent Herbert testified that [redacted] was not the informant and had no role in the investigation. He had personally met the informant numerous times, knew the informant's identity, and testified unequivocally on direct and cross-examination that the informant was not [redacted] Hr'g Tr. at 84:12–85:11, 117:15–21.

The testimony from Martinez and Brackley also narrowed the nature of the dispute. Although Martinez initially testified that Brackley had identified [redacted] as the informant, Martinez clarified that Brackley had warned him to be careful because certain "red flags" suggested that [redacted] "*could have been*" the informant. *Id.* at 36:10–21 (emphasis added). Martinez further acknowledged that Brackley told him he had raised [redacted]s name with the prosecutor and that the prosecutor never indicated that a conflict existed. *Id.* at 36:22–37:6.

---

institutional interests could then be converted into presumed dishonesty, and sworn testimony could be rejected whenever counsel can imagine a reason the witness might prefer a particular outcome. This argument is emblematic of a broader flaw in Martinez's filings, as he repeatedly elevates a theoretical possibility into a factual conclusion, without supplying the evidence necessary to bridge the two.

Similarly, Defense Counsel, both at the Hearing and in the Post-Hearing Brief, devotes substantial attention to what seem like personal criticisms of Brackley's grammar, work habits, professionalism, and character that do little to resolve the constitutional questions before the Court. Zealous advocacy does not permit counsel to replace evidence with suspicion, transform every inconsistency into proof of dishonesty, or attribute misconduct to a witness merely because an accusation is logically imaginable. Arguments must remain grounded in the record, governing law, and the standards of civility expected in this Court.

The Court has nevertheless considered each properly presented argument and resolves the Motion solely on the evidence and applicable law.

Brackley similarly testified that Martinez—not Brackley—first came to believe that [redacted] was involved. *Id.* at 149:23–150:2. Because Brackley had previously represented [redacted], he asked the prosecutor to conduct due diligence and determine whether the prior representation created a *Curcio* issue.[18] The prosecutor later told Brackley that no such issue existed. *Id.* at 150:3–23. Brackley thereafter proceeded on the understanding that [redacted] was not involved, although he acknowledged that he never independently knew the informant's identity. *Id.* at 152:1–12. Brackley also categorically denied ever telling Martinez that [redacted] was the informant. *Id.* at 152:7–12.

2. *The May 3, 2023 lunch meeting*

The principal factual dispute concerning the May 3 lunch is whether counsel merely explained that the absence of a mandatory minimum left open the possibility of a sentence below the Guidelines, or instead promised Martinez that he would avoid incarceration.

Martinez testified that Brackley described his effective sentencing exposure as "zero to 70" months with a "high probability of advocating for no incarceration." Hr'g Tr. at 28:12–20. He further testified that Brackley promised him probation or home confinement, and that he understood Brackley would deliver a sentence involving no incarceration. *Id.* at 31:1–5, 33:4–16, 34:16–23. According to Martinez, those assurances were decisive: he testified that he accepted the Plea Agreement because Brackley promised no incarceration and that, had he known counsel could not expressly request a non-incarceratory sentence, he would not have pleaded guilty. *Id.* at 35:2–17.

[18] A "Curcio issue" refers to an actual or potential conflict of interest that may require the Court to determine whether counsel must be disqualified or whether the defendant may knowingly and intelligently waive the right to conflict-free representation after being fully advised of the conflict and its possible consequences. *See United States v. Curcio*, 680 F.2d 881, 888–90 (2d Cir. 1982).

Brackley and Sosinsky disputed that account. Both denied promising any particular sentence or assigning any probability to a non-incarceratory result. Brackley testified that he explained the anticipated Guidelines range of 70 to 87 months, the benefit of eliminating the mandatory minimum, and the possibility that the Court could impose a lower—or higher—sentence. Hr'g Tr. at 141:8–142:5. Sosinsky similarly testified that both he and Brackley emphasized the benefit of eliminating the mandatory minimum and made clear that the sentence remained within the Court's discretion. *Id.* at 186:18–187:17, 188:11–25.

3. *The Court's findings*

After assessing the credibility and weight of the competing testimony, the Court does not credit Martinez's testimony that Brackley promised a non-incarceratory sentence or represented that counsel was likely to obtain one. For the avoidance of doubt, this finding does not rest on an unqualified acceptance of Brackley's testimony, but rather, on Sosinsky's independent account, the Plea Agreement, the Plea Hearing, the contemporaneous communications between Martinez and Brackley, and Martinez's conduct before and after pleading guilty. Hr'g Tr. at 40:12–41:2, 41:7–13, 41:18–42:5, 48:21–49:9, 49:10–17, 52:3–8, 186:18–187:17, 188:11–25; Plea Tr. at 13:19–14:6, 18:1–19:2. Before the lunch, Martinez had expressed willingness to accept the plea as Brackley had described it. After the lunch, Martinez read the agreement "plenty of times," signed it, and did not seek to withdraw it before the Plea Hearing. He then denied under oath that any outside promise induced his plea and later admitted to the underlying conduct to Probation. Hr'g Tr. at 30:7–31:22, 42:23–43:3, 48:21–49:9, 49:10–17, 52:3–8; PSR ¶ 18. The May 1 text—"if it is as you said"—does not itself mention probation, home confinement, the sentencing advocacy restriction, or a promise of no incarceration. Against that record, the Court does not credit Martinez's later testimony that such a promise was the decisive reason for accepting his plea.

At the same time, the record does not establish that counsel clearly explained the Plea Agreement's sentencing advocacy restriction at the May 3 lunch. The Plea Agreement did three distinct things: it (1) eliminated the statutory mandatory minimum; (2) stipulated to the applicable Guidelines calculation; and (3) barred the parties from seeking or arguing for any departure, adjustment, or variance not identified in Schedule A. The final restriction constrained the parties' advocacy, not the Court's authority to impose any lawful sentence.

Brackley's First Affidavit inaccurately stated that the agreement included a "minimal role" benefit and allowed Martinez to "request a non incarceratory Sentence." Brackley First Aff. ¶ 20. At the Evidentiary Hearing, Brackley acknowledged that neither statement correctly described the Plea Agreement. Hr'g Tr. at 142:6–143:14. Sosinsky likewise recognized that the Agreement barred counsel from expressly requesting a sentence below the stipulated range. *Id.* at 193:4–10. He did not recall either attorney explaining that restriction to Martinez, but recalled explaining that counsel could present mitigating information and that the Court retained authority to impose a lower sentence. *Id.* at 193:19–194:3, 195:3–21. That testimony supports the narrower finding that the attorneys did not clearly explain the distinction at the May 3 lunch. But before Martinez entered his plea, he signed a Rule 11 Application containing a checked provision acknowledging that, subject to the Schedule A exception, he had waived the right to argue for a sentence below the stipulated Guidelines range. Rule 11 Application at 5–6. And at the Plea Hearing, Martinez identified the signature as his, confirmed that Brackley had gone through the application with him and explained it, and said he had no questions. Plea Tr. at 26:16–27:8. The Court therefore does not find that Martinez remained completely unaware of the advocacy restriction when he entered his plea; rather, the remaining uncertainty concerns how clearly Brackley explained the restriction before Martinez signed the Plea Agreement on May 3.

Other inaccuracies diminish Brackley's reliability without proving Martinez's claim that Brackley promised him a non-incarceratory sentence. For instance, Brackley's First Affidavit omitted information concerning the informant despite an order explicitly requiring him to address it. Hr'g Tr. at 153:2–24. He also swore that he spoke "fully" with Stewart before and after Martinez consulted him, and directed Martinez to seek a second opinion concerning the [redacted] issue. Brackley First Aff. ¶¶ 21–23; Brackley Second Aff. ¶ 21. Yet Stewart testified that he did not speak with Brackley before the consultation, that Martinez contacted him directly for the brief call, that Stewart had not reviewed the case materials or Plea Agreement, and that the call did not concern an informant or potential conflict. Hr'g Tr. at 64:12–65:5, 66:19–67:8, 67:14–19, 70:12–71:6, 72:2–7. The Court credits Stewart and rejects Brackley's contrary description of the consultation. But Stewart had no personal knowledge of the May 3 lunch and offered no testimony that Brackley made a sentencing promise, that [redacted] was the source, or that Martinez would have rejected the final plea. *Id.* at 67:14–68:4, 69:1–4.

The Post-Hearing Brief invokes the maxim *falsus in uno, falsus in omnibus* to assert that because the Court must reject *part* of Brackley's testimony, it should "completely disregard" *all* of it. Post-Hearing Br. at 2–3. Martinez materially overstates that principle. *See Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004) (describing the *falsus in uno, falsus in omnibus* principle and explaining that it is not true that a witness who fabricates in one area is incompetent to testify about others). Here, the Court takes a more nuanced approach: it rejects Brackley's inaccurate descriptions of the Plea Agreement and Stewart consultation, but credits his narrower denial of a promise because Sosinsky independently gave the same account and the contemporaneous record corroborates it. The Court's credibility findings are issue-specific, not all or nothing.

## II. LEGAL STANDARD

Entering a guilty plea "is a grave and solemn act." *Brady v. United States*, 397 U.S. 742, 748 (1970). After a court accepts a guilty plea but before sentencing, a defendant may withdraw it only by showing a "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). A defendant has no right to withdraw an accepted plea "simply at his whim," and the burden is "substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).[19] The decision to grant a motion to withdraw a guilty plea "lies within the sound discretion of the trial court." *United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir. 1976).

When evaluating such a motion, the Court considers three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252. The Government need not establish prejudice when the defendant fails to satisfy the first two factors. *Id.* at 255.

An innocence assertion must be supported by facts in the record; a "bald assertion" is insufficient. *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001). The defendant must also explain why his present position conflicts with the admissions he made during the plea colloquy. *Jones*, 336 F.3d at 253. A claim that the Government may have difficulty proving its case is not itself a claim of innocence. *Brown*, 250 F.3d at 818. While legal innocence may satisfy the first

[19] Martinez emphasizes that a pre-sentence motion to withdraw a guilty plea "should be granted more liberally" than a post-sentence challenge. Reply at 1 (quoting *United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985)). That may be true, but Martinez overstates what that formulation accomplishes. *Trott* does not create a presumption favoring withdrawal, excuse a defendant from substantiating his allegations, or diminish the "substantial" burden imposed by Rule 11(d)(2)(B). *See Jones*, 336 F.3d at 252. It merely distinguishes the governing presentence standard from the more demanding standard applicable after sentencing. Martinez must still demonstrate a fair and just reason for undoing his sworn plea.

factor, it too must rest on credible supporting facts rather than a change of position after the plea. *United States v. James*, 928 F.3d 247, 253–54 (3d Cir. 2019). Sworn representations at a plea hearing are not invariably conclusive, but they carry a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Where ineffective assistance supplies the asserted reason for withdrawal, the defendant must satisfy both components of the test outlined in *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984): objectively unreasonable performance and prejudice. *Jones*, 336 F.3d at 253–54. In the plea context, prejudice requires a reasonable probability that, but for counsel's error, the defendant would have rejected the plea and insisted on trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). A defendant's after-the-fact statement that he would have gone to trial is not enough—the Court must evaluate contemporaneous evidence and the objective circumstances surrounding the decision. *Lee v. United States*, 582 U.S. 357, 369 (2017). A court need not decide deficient performance if the prejudice showing fails. *Strickland*, 466 U.S. at 697.

## III. DISCUSSION

Martinez's Motion raises serious questions concerning the advice he received before pleading guilty, the circumstances under which he accepted the Plea Agreement, and whether his former counsel's prior representation created a disabling conflict. The Court has considered those arguments carefully, together with the parties' submissions, the plea record, and the testimony presented at the Evidentiary Hearing. For the reasons that follow, the Court concludes that Martinez has not established a fair and just reason to withdraw his plea and will therefore **DENY** his Motion.

### A. Martinez Has Not Credibly Supported His Assertion of Innocence

Construed liberally, the Motion asserts factual innocence: Martinez says he did not know the other passengers in the car, what the Bag contained, or where it was going. Martinez Aff.

¶¶ 4–6. But those assertions alone are not enough. To prevail, Martinez must support his assertions of innocence with facts in the record. *See Brown*, 250 F.3d at 818. Martinez's claims, however, are not supported by record facts and do not adequately explain his repeated admissions to the contrary.

At the Plea Hearing, Martinez admitted that he knowingly joined an agreement to possess with intent to distribute at least three kilograms of cocaine. Plea Tr. at 30:15–31:3. He did so after the Court reviewed the offense elements, warned him to answer truthfully, repeatedly invited questions, and offered time to consult counsel. *Id.* at 2:18–3:15, 29:20–31:3. Months later, Martinez again "truthfully admitted" the same conduct to Probation and expressed remorse; even after filing the Motion, he did not object to that account. PSR ¶ 18; Hr'g Tr. at 49:10–17, 52:3–8, 53:1–54:2. These were not a single conclusory "yes" extracted from a perfunctory colloquy. They were repeated admissions in separate settings months apart, and they carry substantial weight. *See Blackledge*, 431 U.S. at 74; *James*, 928 F.3d at 253–54.[20]

Martinez does not persuasively explain those admissions. He testified that Brackley told him to answer "yes to everything" at the Plea Hearing. Hr'g Tr. at 34:3–14. But Martinez acknowledged at the Evidentiary Hearing that he understood he was under oath at the Plea Hearing, had been invited to ask questions, and nevertheless told the Court that he was satisfied with

---

[20] Martinez relies on a trio of cases to argue that his guilty plea does not foreclose a later assertion of innocence. Reply at 4 (citing *Baker v. United States*, 109 F.4th 187, 203 (3d Cir. 2024); *Brady v. United States*, 397 U.S. 742, 749–50 (1970); and *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970)). The Court agrees with that limited proposition. A guilty plea does notinvariably establish factual guilt, and *Baker* recognizes that a plea and a later claim of innocence are not logically irreconcilable in every case. *See* 109 F.4th at 203. Martinez asks those cases to do more than they do. They do not require the Court to disregard his case-specific admissions, particularly where he repeated them under oath and later reaffirmed them. Thus, while the plea colloquy is not conclusive by itself, it remains powerful evidence against which Martinez's present account must be measured.

counsel, had discussed all defenses, had received no outside promises, and was guilty. *Id.* at 44:2–45:3, 46:17–47:21, 48:1–20; Plea Tr. at 2:18–3:15, 8:16–9:10, 18:14–19:2. He then thanked Brackley, rather than objecting to coercion or asserting innocence. Hr'g Tr. at 48:21–49:9. Even assuming Brackley gave the generalized instruction Martinez describes, it does not explain away each of those detailed, sworn answers. *See Jones*, 336 F.3d at 253.

The Court finds Martinez's remaining arguments regarding his innocence unpersuasive. *First*, Martinez characterizes the Government's evidence as "underwhelming." Post-Hearing Br. at 3. He emphasizes that agents did not observe him physically possess the Bag, that he stood some distance from it when agents approached, and that the *Miranda* warnings and search consents Agent Herbert described were neither recorded nor memorialized at the scene. *Id.* Although those points may bear on the admissibility or persuasive force of portions of the Government's evidence, they do not supply affirmative facts supporting Martinez's present claim that he lacked knowledge of the cocaine or the conspiracy.[21] At most, those circumstances identify potential weaknesses in the Government's proof. They do not reconcile Martinez's current denial with his sworn admission that he knowingly joined the cocaine conspiracy, his later admission to Probation, or the other contrary evidence in the record. *See Brown*, 250 F.3d at 818 (rejecting an assertion of "legal innocence" based on the alleged insufficiency of the Government's proof where the defendant presented no evidence that she had not committed the offense). Beyond his own later

[21] Martinez improperly treats a potential weakness in the Government's case as affirmative evidence of his innocence. It is not. The possibility that a statement or physical evidence might be suppressed does not establish that the underlying conduct did not occur; it concerns whether the Government may use particular evidence to prove that conduct. Likewise, Martinez's distance from the Bag and the absence of evidence that he physically carried it may be consistent with his present account, but neither fact affirmatively negates his knowledge or participation.

denial, Martinez identifies no corroborating fact showing that he was unaware of the cocaine or the agreement to possess and distribute it.

*Second,* Martinez overstates the significance of *United States v. Samaria* and *United States v. Taylor*. Mot. at 2; Reply at 3–4 (citing *United States v. Samaria*, 239 F.3d 228, 235 (2d Cir. 2001), *overruled on other grounds by United States v. Huezo*, 546 F.3d 174, 180 n.2 (2d Cir. 2008); and *United States v. Taylor*, Crim. No. 11-452, 2012 WL 5211781, at *4–5 (D.N.J. Oct. 22, 2012)). Those decisions establish that proximity to contraband or association with alleged coconspirators, standing alone, does not prove knowing participation in a conspiracy. However, they do not relieve a defendant seeking to withdraw a guilty plea of the separate obligation to buttress his assertion of innocence with record facts and explain his contrary sworn admissions. *See Jones*, 336 F.3d at 253. The Court does not reject Martinez's assertion of innocence merely because he was near the cocaine or associated with the other men. It rejects the assertion because Martinez offers no corroborating facts that establish—or even meaningfully support—his claimed lack of knowledge, while leaving unexplained his repeated admissions in separate proceedings. *Samaria* and *Taylor* do not require the Court to disregard those admissions, and they do not transform potential weaknesses in the Government's evidence into affirmative evidence of innocence.

In sum, Martinez has failed to credibly support his assertions of innocence with facts in the record. Therefore, the first *Jones* factor strongly weighs against withdrawal.

### B. Martinez Has Not Shown a Sufficiently Strong Reason for Withdrawal

Martinez's arguments under the second *Jones* factor all rest on alleged ineffective assistance by Brackley and fall into four groups: (1) an asserted conflict of interest; (2) inaccurate advice regarding the Plea Agreement and sentencing; (3) inadequate review of the Plea Agreement and pressure from the Government's deadline; and (4) failures to investigate or seek suppression. Mot. at 2–4; Martinez Aff. ¶¶ 7–17; Reply at 5–12. As explained below, none establishes the

required prejudice, and the conflict theory also fails on its factual premise. The Court therefore need not decide whether every aspect of Brackley's performance fell below professional norms. *See Strickland*, 466 U.S. at 697; *Jones*, 336 F.3d at 253–54.

1. *Brackley's prior representation of* [redacted] *did not create an actual conflict*

Martinez has argued across several filings that Brackley's prior representation of [redacted] created an unwaivable conflict because [redacted] was the confidential informant whose tip began the investigation that led to Martinez's arrest. Martinez Aff. ¶¶ 15–17; Reply at 9–11. Brackley explained that [redacted] denied being an informant and that Martinez's suspicion lacked reliable support, but he also acknowledged that he did not personally know whether [redacted] was one of the Government's confidential sources. Brackley Second Aff. ¶¶ 10–22. The Government, meanwhile, characterized the allegation as a "complete fabrication" and represented that the DEA agents who conducted the investigation confirmed that [redacted] was neither an informant in this case nor involved in Martinez's arrest or the seizure of the drugs. Opp'n at 5, 9.

An actual-conflict claim requires materially divergent interests and an adverse effect on counsel's performance; a speculative or potential conflict does not suffice. *United States v. Savage*, 85 F.4th 102, 110–12 (3d Cir. 2023); *see also Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (explaining that an "actual conflict" exists only where the conflict adversely affected counsel's performance, rather than merely creating a theoretical division of loyalties).

The Court agrees with Martinez that his suspicion concerning [redacted] was not recently invented for purposes of the Motion. Brackley's Second Affidavit and testimony confirm that the issue arose during the representation. Brackley Second Aff. ¶¶ 10–22; Hr'g Tr. at 149:23–150:2. But the origin of a suspicion and the truth of the suspected fact are different issues. Agent Herbert personally knew the source and testified that [redacted] was not that person, and, in fact, did not

know anyone named [redacted] Hr'g Tr. at 84:12–85:11, 117:15–21. Agent Herbert testified from personal knowledge, answered unequivocally on direct and cross-examination, and was not contradicted by any witness or record evidence concerning [redacted]'s actual role. The Court credits that testimony.

Martinez offers no contrary evidence concerning [redacted]'s actual involvement in the investigation. Instead, he argues that because Agent Herbert acknowledged the importance of protecting a confidential informant's identity, he had a reason to deny [redacted]'s involvement. Post-Hearing Br. at 1–2. That inference converts a legitimate law-enforcement responsibility into a basis for presuming dishonesty. Martinez identifies no inconsistency, evasive answer, or affirmative evidence suggesting that Herbert testified falsely. The bare possibility that a witness could lie does not permit the Court to disregard sworn testimony it finds credible—and it does not satisfy Martinez's burden to establish that an actual conflict existed.[22]

Martinez's own account also narrowed at the hearing. Although he initially answered affirmatively when asked whether Brackley had identified [redacted] as the source, Martinez immediately clarified that Brackley had said only that [redacted] "*could have been*" the confidential informant. Hr'g Tr. at 36:10–21 (emphasis added). Martinez is not faulted for initially harboring that suspicion. But after discovery, extensive briefing, and an Evidentiary Hearing convened in

---

[22] Martinez's theory lacks a workable limiting principle. If an agent's duty to protect a source, without more, permitted an inference that the agent testified falsely, testimony from an agent with personal knowledge could never resolve a disputed source-identification issue unless the Government disclosed the source's identity. Even then, the possibility that the Government identified the wrong source still exists. Martinez cites no authority imposing such a requirement, and speculation about a witness's conceivable motive does not substitute for evidence that the witness testified falsely.

part to test the allegation, he still has not substantiated his suspicion. The Court therefore rejects the factual premise on which Martinez's conflict claim depends.[23]

Because [redacted] was not the source and had no role in this investigation, Martinez identifies neither materially divergent interests nor any strategic choice Brackley made to protect [redacted] at Martinez's expense. Nor does he identify a motion forgone, a line of inquiry curtailed, or advice altered to benefit [redacted]. The fact that Brackley raised the concern with the prosecutor is inconsistent with the theory that he suppressed the issue to protect a former client. A suspicion—no matter how strongly held—is not proof of an actual conflict. The conflict theory therefore supplies no fair and just reason for withdrawal. *See Savage*, 85 F.4th at 110–12.

2. *Martinez has not shown prejudice from counsel's advice regarding the plea and sentencing*

The sentencing advice claim is at the heart of Martinez's Motion. The final Plea Agreement barred the defense from requesting a departure, adjustment, or variance not listed in Schedule A. Schedule A ¶ 8. Brackley later swore, incorrectly, that the Agreement allowed Martinez to "request a non incarceratory Sentence," and he admitted at the Evidentiary Hearing that no variance carveout permitted that request. Brackley First Aff. ¶ 20; Hr'g Tr. at 143:4–14. Sosinsky did not recall either lawyer clearly explaining that restriction at the May 3 lunch. Hr'g Tr. at 195:15–21. Although Martinez later signed the Rule 11 Application acknowledging that he had waived below-range advocacy aside from arguments regarding a departure set forth in Schedule A, Plea Agreement at 5–6, the Court assumes, without deciding, that Brackley's explanation of the

---

[23] Stewart's testimony established that Brackley inaccurately described the timing and subject of Stewart's brief consultation. That discrepancy does not, however, advance Martinez's conflict theory. Stewart did not testify that [redacted] supplied information to law enforcement, participated in the investigation, or had interests that Brackley protected at Martinez's expense. His testimony therefore does not undermine the Court's finding that [redacted] was not the informant and that Brackley's prior representation created no actual conflict.

Plea Agreement before Martinez signed it on May 3 fell below an objective standard of reasonableness.[24] *See Strickland*, 466 U.S. at 687–88.

Even if Brackley's May 3 explanation was deficient, that alone does not establish prejudice. To evaluate prejudice, the Court must identify precisely what Martinez was not adequately told and consider whether he would have rejected the plea offer and gone to trial. *Hill*, 474 U.S. at 58–59. For purposes of that analysis, the Court assumes that the May 3 advice did not clearly explain that although the Court could impose a non-incarceratory sentence, counsel could not formally ask the Court to do so.

After considering the record, the Court concludes Martinez has not demonstrated a reasonable probability that accurate advice would have caused him to reject the agreement and insist on trial. The offer eliminated a mandatory minimum after Martinez had rejected proposals carrying ten- and five-year minimums, reduced the attributable quantity to three to five kilograms, and fixed the total offense level at 25. Schedule A ¶¶ 1–7; Hr'g Tr. at 38:11–39:14, 128:14–24, 132:10–25, 135:6–23, 137:2–13. Rejecting it would have exposed Martinez to charges based on the much larger quantity recovered and to enhanced mandatory-minimum exposure based on his

---

[24] Martinez relies on a trio of Third Circuit decisions for the proposition that counsel must understand the governing sentencing framework and provide sufficient information for a defendant to make a reasonably informed decision whether to plead guilty. Reply at 2–3 (citing *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992); and *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003)).

The Court agrees with that general proposition and, for purposes of this Motion, assumes that Brackley's incomplete explanation fell below an objective standard of reasonableness. *Cf. United States v. Bui*, 795 F.3d 363, 367–69 (3d Cir. 2015) (finding deficient performance where counsel incorrectly advised that the defendant would qualify for statutory safety valve relief even though the offense of conviction made him categorically ineligible). Those decisions do not, however, eliminate Martinez's separate obligation to establish prejudice. Thus, the dispositive question remains whether there is a reasonable probability that an accurate explanation of Schedule A ¶ 8 would have caused him to reject the Plea Agreement and proceed to trial.

prior conviction. *See* Hr'g Tr. at 145:7–14 (Brackley explaining that if Martinez rejected the proposal, the Government intended to indict him on charges carrying a ten-year mandatory minimum and file an information under 21 U.S.C. § 851 based on his prior conviction); *see also id.* at 196:3–10, 200:11–24 (Sosinsky testifying that the alternatives to the plea involved mandatory minimums). The plea thus provided a substantial and concrete benefit independent of any hope for an extraordinary sentence. Martinez speculates that the Government made the offer to avoid "burning" its source, rather than because of anything Brackley did. Post-Hearing Br. at 2. No witness supported that theory, and the Court need not assign credit for the offer. What matters is the offer's objective value and whether Martinez probably would have rejected it if properly advised.

The contemporaneous communications between Martinez and Brackley also suggest he would have accepted the plea if properly advised. On March 31, Martinez asked Brackley whether his offense level would be lower under § 841(b)(1)(C). On May 1, after consulting his family, Martinez said he was willing to accept the plea "if it is as you said." On May 2, he again asked about the new base offense level. Hr'g Tr. at 40:12–41:2, 41:7–13, 41:18–42:5, 133:16–134:23, 136:18–24, 138:1–6; Gov. Ex. G-1 at 35–36. Those exchanges concern the charge, mandatory minimum, drug quantity, and offense level. Although Martinez and Brackley were discussing the proposal's sentencing consequences in writing, no contemporaneous message mentions probation, a promise of no incarceration, a "high probability" of that result, or the ability to make a formal variance request.

The written Plea Agreement, the signed Rule 11 Application, and the Plea Hearing further undermine the claimed counterfactual. Schedule A expressly barred unlisted variance requests; Martinez signed an acknowledgment disclaiming unwritten promises; and he admitted that he

repeatedly read the agreement after the May 3 lunch. Plea Agreement at 7; Schedule A ¶ 8; Hr'g Tr. at 30:7–31:22, 43:10–16. At the Plea Hearing, Martinez denied any outside promise, said he understood the agreement, confirmed that he had no questions, and acknowledged that neither counsel nor the Court could then know his ultimate sentence. Plea Tr. at 13:19–14:6, 18:1–19:2, 22:15–23:20. The signed Rule 11 Application is even more specific: Martinez checked a box next to a provision stating that, except for arguments regarding a departure identified in Schedule A, he had "waived the right to argue that the sentencing judge should impose a sentence below the range that results from this offense level." Rule 11 Application at 6. At the Plea Hearing, Martinez identified the signature as his, confirmed that Brackley had gone through the application with him and explained it, and said he had no questions. Plea Tr. at 26:16–27:8. The Court's colloquy did not itself restate Schedule A's advocacy restriction, and the Court need not decide whether these later acknowledgments independently cured any deficient advice given on May 3. They are nevertheless powerful contemporaneous evidence against Martinez's claim of prejudice: before entering his plea, he acknowledged the very advocacy limitation he now says would have caused him to reject the agreement.[25]

Martinez's reliance on *Lee v. United States*, 582 U.S. 357 (2017) is misplaced. *Lee* rejects a categorical rule that a strong prosecution case always defeats prejudice, and recognizes that an individual defendant may rationally choose a "Hail Mary" trial when a particular consequence is truly determinative. *Id.* at 367–71. *Lee* also instructs courts not to upset pleas based solely on *post*

---

[25] The Court's determination that Martinez has not shown a reasonable probability that accurate advice would have caused him to reject the Plea Agreement and proceed to trial is also consistent with *United States v. Shedrick*, which explains that an erroneous sentencing prediction ordinarily does not render a plea involuntary where the written agreement and plea colloquy make clear that the court retains sentencing authority and no sentence is guaranteed. 493 F.3d 292, 299–300 (3d Cir. 2007).

*hoc* assertions and to look instead for contemporaneous evidence substantiating the defendant's expressed preference. *Id.* at 369. Martinez did testify that he would not have accepted the plea had he known that counsel could not request a non-incarceratory sentence. Hr'g Tr. at 35:9–11. But that assertion, made for the first time at the hearing, is conclusory. More importantly, it conflicts with the contemporaneous Rule 11 record: before entering the plea, Martinez signed an acknowledgment that he had waived below-range advocacy and then swore that counsel had explained the application to him. Plea Agreement at 6; Plea Tr. at 26:16–27:8. Nothing contemporaneous indicates that preserving counsel's ability to request a non-incarceratory sentence was dispositive to Martinez's decision. As shown above, his messages focused on the § 841(b)(1)(C) disposition, removal of the mandatory minimum, drug quantity, and offense level. Hr'g Tr. at 40:12–41:2, 41:7–13, 41:18–42:5, 133:16–134:23, 136:18–24, 138:1–6; Gov. Ex. G-1 at 35–36. In context, the Court finds that Martinez's May 1 statement—"if it is as you said"—referred to the central bargain he and Brackley were discussing, not to an unwritten promise of a noncustodial sentence. Martinez's rejection of the earlier offers with mandatory minimums likewise shows that avoiding a guaranteed mandatory term mattered greatly to Martinez. It does not, however, show that he would have rejected the final offer unless counsel could formally request probation.

Moreover, the timing of the Motion is relevant, but not dispositive. Martinez moved to withdraw his plea before sentencing, so this is not a case of post-sentence regret. However, he did not seek withdrawal during the more than two months between signing the Agreement and entering the plea, at the Plea Hearing itself, or immediately afterward. He filed the Motion nearly eight months after the Plea Hearing and, in the meantime, admitted the same conduct to Probation. Hr'g Tr. at 42:23–43:3, 49:10–17, 52:3–8, 53:1–54:2. Martinez also provides no adequate explanation

for waiting to seek withdrawal despite the intervening Plea Hearing, the Court's repeated invitations to ask questions or consult counsel, and his later admission of the offense conduct to Probation. Considering the plea's reduction in mandatory exposure, the contemporaneous messages, Martinez's repeated reading of the agreement, his signed Rule 11 acknowledgment, his sworn disclaimers, and his later admission, the Court finds no reasonable probability that a precise explanation of Schedule A ¶ 8 would have caused him to reject the Plea Agreement and proceed to trial. *Hill*, 474 U.S. at 58–59; *Lee*, 582 U.S. at 369.

*3. Martinez has not shown prejudice from the plea-review process or offer deadline*

The record confirms that neither Brackley nor Sosinsky reviewed the agreement line by line at the May 3 lunch. Hr'g Tr. at 28:21–29:1, 140:14–18, 185:18–20. Accepting Martinez's testimony that he first received the written document that day, the same-day deadline created real pressure, and a more thorough review would have been preferable. The Court must ask whether this alleged deficiency probably changed Martinez's decision to enter the plea. *Strickland*, 466 U.S. at 687–88, 694; *Hill*, 474 U.S. at 58–59.

The record shows that it did not. The written document may have been first seen on May 3 under Martinez's account, but the substance of the proposal was not first discussed that day. On March 31—over a month before—Martinez was asking Brackley whether proceeding under § 841(b)(1)(C) would lower his offense level. On May 1, after consulting his family, he said he was willing to accept the plea they had discussed. On May 2, he asked about the new base offense level. Hr'g Tr. at 40:12–41:2, 41:7–13, 41:18–42:5, 133:16–134:23, 136:18–24, 138:1–6; Gov. Ex. G-1 at 35–36. Given these prior communications, the May 3 lunch centered on the current offer's sentencing exposure and its advantages over the mandatory-minimum alternatives. Hr'g Tr. at 140:6–141:21, 145:7–14, 184:3–185:17, 186:1–24.

Martinez also left the lunch with the written offer and read it repeatedly before signing it. Hr'g Tr. at 30:7–31:22, 42:23–43:16. More than two months later, the Court reviewed the Agreement at length, repeatedly offered Martinez an opportunity to ask questions or consult counsel, and obtained his confirmation that counsel had explained the terms and that he understood them. Plea Tr. at 2:18–3:15, 13:19–14:12, 16:1–14, 17:5–18:21. By then, Martinez had also signed the Rule 11 Application and, at the Plea Hearing, confirmed that Brackley had gone through the application with him and explained it. Rule 11 Application at 6; Plea Tr. at 26:16–27:8. Martinez identified no unresolved question and entered the plea. His eventual decision to move before sentencing does not erase the two-month opportunity to reconsider the agreement or supply contemporaneous evidence that the May 3 deadline overbore his will.

On this record, any deficiency in Brackley's review of the Plea Agreement does not provide a fair and just reason to undo the July plea. Martinez knew the essential bargain before May 3, reviewed the written agreement repeatedly that day, and confirmed his understanding after a lengthy colloquy more than two months later. *See Jones*, 336 F.3d at 252–55.

*4. Martinez has not shown prejudice from any investigation, discovery, or suppression shortcoming*

Martinez also faults Brackley for failing to obtain formal discovery, await an indictment, investigate the source, or move to suppress his statements and the evidence recovered during the searches. Martinez Aff. ¶¶ 7–11, 15–17; Mot. at 2–4. Where the alleged ineffectiveness concerns investigation or suppression, prejudice turns on whether the omitted work likely would have changed counsel's recommendation and Martinez's decision to plead guilty. *Hill*, 474 U.S. at 59. The Court must account for the uncertain prospects of suppression litigation, the remaining prosecution case, and the concrete benefits secured by the plea. *Premo v. Moore*, 562 U.S. 115, 124–28 (2011).

The Evidentiary Hearing identified issues Brackley could have explored. For one, Martinez's initial statement that the Bag contained "more than ten" preceded any *Miranda* warnings. Hr'g Tr. at 89:17–90:8, 111:19–112:8. Agent Herbert acknowledged that no recording or signed form memorialized the oral warnings or consents allegedly given at the scene and that agents did not observe Martinez physically possess the Bag. *Id.* at 110:16–20, 112:19–114:16, 115:16–19. Martinez also denied receiving warnings until he was at DEA headquarters. *Id.* at 13:15–14:14. Those disputes could have warranted further factual development and potentially a suppression motion. Martinez, however, treats the existence of these disputed facts as though suppression necessarily follows. It does not. Identifying a potentially litigable issue is not the same as showing a meritorious motion or a reasonable probability that the issue would have caused Martinez to reject the plea.

Even exclusion of the initial unwarned statement would not automatically require suppression of physical evidence derived from a voluntary statement. *See United States v. Patane*, 542 U.S. 630, 643–44 (2004) (plurality opinion). Agent Herbert testified that he later administered oral warnings and obtained consent, and Martinez executed a written *Miranda* waiver at DEA headquarters. Hr'g Tr. at 90:15–24, 91:11–20, 95:2–22, 96:1–11. The Court does not decide here whether every consent was valid. Nor does it overstate the amount of evidence that would necessarily have survived all conceivable suppression rulings. The Court need not determine which, if any, of the other evidence described at the hearing would have been affected by particular suppression rulings. The record included the source's information, the agents' corroborating surveillance observations, and the passengers' statements. *Id.* at 80:16–82:8, 85:15–86:17, 88:14–89:13, 91:1–8. Martinez does not show that this evidence would have been suppressed, or that the resulting prosecution case would have been so weakened that he would have rejected the plea. He

therefore has not shown what evidence likely would have been suppressed, what the resulting prosecution case would have been, or why those uncertain prospects would have caused him to surrender a plea eliminating substantial mandatory exposure. *See Premo*, 562 U.S. at 124–28.

Martinez's broader discovery and investigation theories fare no better. The parties participated in two reverse proffers, and Brackley stated at the Plea Hearing that Martinez was accepting the Agreement before formal discovery while having reviewed every document the Government had provided to that point. Brackley First Aff. ¶¶ 9–19; Plea Tr. at 17:20–25. Martinez had already confirmed that Brackley had shown him all discovery received to that point. *Id.* at 16:12–22. He still identifies no exculpatory witness, document, recording, or other evidence that additional investigation likely would have uncovered. Speculation that further work might have produced something useful does not establish prejudice. *See Jones*, 336 F.3d at 254–55; *James*, 928 F.3d at 253–54.

Most importantly, Martinez does not connect any omitted investigation or suppression theory to a reasonable probability that he would have surrendered the plea's concrete reduction in mandatory exposure and proceeded to trial. *See Hill*, 474 U.S. at 58–59; *Premo*, 562 U.S. at 124–28. Potential suppression may affect the strength of the Government's case, but it does not establish factual innocence or plea-stage prejudice on this record. These theories therefore do not justify withdrawal.

* * *

Taken together, Martinez's arguments do not establish a sufficiently strong reason to withdraw his plea and therefore fail to satisfy the second *Jones* factor. The Court rejects as factually unsupported his claims that Brackley promised a noncustodial sentence, withheld the evidence, or represented him while burdened by an actual conflict. Even assuming Brackley's

May 3 explanation of the sentencing advocacy restriction was deficient or that he should have investigated potential suppression issues more fully, Martinez has not shown a reasonable probability that either alleged deficiency would have caused him to reject the Plea Agreement and proceed to trial. The Plea Agreement removed a substantial mandatory minimum; Martinez indicated his willingness to accept that proposal before the disputed lunch; and, before entering the plea, he signed the Rule 11 Application, which acknowledged that he had waived below-range advocacy and swore that counsel had explained the application. Rule 11 Application at 6–7; Plea Tr. at 26:16–27:8. He also has not established either a meritorious suppression theory or that further investigation would have materially altered the Government's case. The record thus reflects not a plea produced by constitutionally deficient representation, but a defendant seeking to escape a favorable agreement after confronting its sentencing consequences. The second *Jones* factor weighs decisively against withdrawal.

**C. The Court Will Not Consider Prejudice to the Government**

Martinez has neither credibly supported his assertion of innocence nor established a sufficiently strong reason to withdraw the plea. The Government therefore need not prove that withdrawal would prejudice its ability to try the case. *Jones*, 336 F.3d at 255.

The Court nevertheless addresses Martinez's argument that the Government conceded the third *Jones* factor when it stated at the Evidentiary Hearing that withdrawing the plea would principally harm Martinez by restoring his mandatory-minimum exposure. Hr'g Tr. at 7:1–14; Post-Hearing Br. at 4. That remark used "prejudice" in its ordinary sense—*i.e.*, that withdrawing the plea would harm Martinez by restoring his exposure to a mandatory minimum sentence. That observation did not concede the third *Jones* factor, which concerns prejudice to the Government in prosecuting the case, such as the burden of reassembling witnesses and other trial resources. *See, e.g.*, *Crowley*, 529 F.2d at 1072 (finding prejudice where the Government's trial witnesses

had already assembled and would need to be reassembled); *United States v. Fazio*, Crim. No. 09-325-06, 2011 WL 6780926, at *9 (W.D. Pa. Dec. 27, 2011) ("Increased cost and inconvenience to the government are grounds for finding prejudice, as are the diminished memory and incentive to cooperate of Government witnesses."). Martinez's contrary characterization of the Government's statement misses the mark.

In any event, because Martinez has failed to satisfy the first two *Jones* factors, the Court need not reach the third. Accordingly, the Motion is **DENIED**.

## IV. CONCLUSION AND ORDER

For the reasons above,

**IT IS**, on this **19th** day of August, 2026,

**ORDERED** that Martinez's Motion to withdraw his guilty plea, D.E. 80-1, is **DENIED**; and it is further

**ORDERED** that within **30 days** of this Order, the parties shall file a joint status update on the docket, identifying the next steps necessary before the Court schedules Martinez's sentencing; and it is further

**ORDERED** that, because "in both criminal and civil cases, a common law public right of access to judicial proceedings and records" exists, *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001), within **30 days** of this Order, the parties shall jointly propose a redacted version of this Memorandum Order.

Evelyn Padin, U.S.D.J.